# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  No. CR 07-1336  JB

SAUL PENA-MACEDO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed February 29, 2008 (Doc. 56)("Sentencing Memo."). The Court held a sentencing hearing on March 26, 2008. The primary issues are: (i) whether the United States Probation Office ("USPO") correctly used the weight of the diluted heroin to determine Defendant Saul Pena-Macedo's base offense level; (ii) whether the resulting Guideline sentencing range over-reflects the type and the quantity of the drug; and (iii) whether a variance is appropriate because the Guideline sentence does not reflect that the heroin was diluted. Because the USPO correctly used the weight of the heroin mixture in determining the base offense level, the Court will overrule any objection to the calculation of the advisory Guideline sentence. Because the Guideline sentence does not over-reflect the drug and quantity, and because those factors remain important considerations after United States v. Booker, 543 U.S. 220 (2005), the Court will deny Pena-Macedo's request for a variance, and will sentence him to a period of incarceration at the low end of the Guideline range.

## FACTUAL BACKGROUND

Pena-Macedo is twenty-four years old. See Presentence Investigation Report ("PSR") at 1,

disclosed January 15, 2008.  He is married and has twelve years of formal education.  See id. ¶¶ 42-43, 48, at 11-12.  His only previous conviction is for being a minor in possession of alcohol -- a misdemeanor that occurred almost five years ago when he was a juvenile.  See id. ¶ 34, at 9.  He was sentenced to nine months of probation for that offense.  See id.

At the scene of the arrest for this federal conviction, a second officer responded and recognized Pena-Macedo as someone that he had stopped twice before.  See id. ¶ 11, at 4.  On both prior occasions, Pena-Macedo gave the officer the same story about visiting an uncle in Albuquerque that he gave the arresting officer on this occasion.  See id.

The net weight of the heroin in this case was determined to be 555.4 grams.  See id. ¶ 19, at 7.  According to Pena-Macedo, a laboratory report indicates that this heroin was diluted by the time it came into Pena-Macedo's possession.  See Sentencing Memo. at 1.  According to the laboratory report, the actual weight of the heroin mixture was 387.1 grams.  See id. at 2.  Accordingly, the heroin seized was 69.7 percent pure.  See id. That fact is not in dispute.  See United States to Defense's Sentencing Memorandum ¶ 3, at 2, filed March 5, 2008 (Doc. 57)("Response").

## PROCEDURAL BACKGROUND

The PSR calculates Pena-Macedo's base offense level as 28.  See PSR ¶ 25, at 8.  According to the Guideline's drug quantity table, Offense Level 28 is appropriate for offenses involving "at least 400 but less than 700 grams of heroin."  U.S.S.G. § 2D1.1(c)(6).

All parties agree that Pena-Macedo was a minor participant in this federal offense, his only offense since becoming an adult.  See PSR ¶ 28, at 8; Plea Agreement ¶ 10(a), at 5, filed November 6, 2007 (Doc. 48).  Moreover, the United States has stipulated that he was a minor participant in this offense.  See PSR ¶ 28, at 8; Plea Agreement ¶ 10(a), at 5, filed November 6, 2007 (Doc. 48).  Pena-Macedo represents that he pled guilty without offering any resistance, and made a complete and

truthful statement regarding his offense conduct.  <u>See</u> Sentencing Memo. at 1.  This conclusion is corroborated by the fact that Pena-Macedo qualifies for the "safety valve," and the United States has also stipulated to this benefit.  Sentencing Memo. at 1; Response  ¶ 2, at 1-2.

The Probation Office calculated the total offense level at 21, and Criminal History Category I.  <u>See</u> PSR ¶ 32, 35, at 9.  In a letter dated February 22, 2008, Pena-Macedo's counsel pointed out to the USPO that, if the PSR used the actual weight, the result would have placed Pena-Macedo in offense level 26.  <u>See</u> Sentencing Memo. at 4.  On March 25, 2008, the USPO responded by citing the notes following the drug quantity table in U.S.S.G. § 2D1.1: "[T]he weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."  Addendum to PSR at 1, dated March 25, 2008 ("Addendum").

On February 29, 2008, Pena-Macedo's counsel submitted and filed a Sentencing Memorandum, asking the Court for a sentence below the recommended Guideline imprisonment range.  <u>See</u> Sentencing Memo. at 1, 5.  For a number of reasons stated therein, Pena-Macedo prays for a sentence below the recommended Guideline imprisonment range.  <u>See id.</u> at 5.  On March 5, 2008, the United States moved the Court to allow its counsel to respond to Pena-Macedo's sentencing memorandum.  <u>See</u> Response at 1.

The United States opposes Pena-Macedo's request, concurs with the USPO's calculations in the PSR, and requests a sentence at the low end of the applicable Guideline range.  <u>See id.</u> ¶¶ 1-5, 1-3.  The United States contends that among Pena-Macedo's possessions was an image of Jesus Malverde, widely known as the patron saint of drug dealers, or the "narco saint."  <u>Id.</u> ¶ 4, at 3.  The United States is not asking the Court to enhance Pena-Macedo's sentence based on any information it has received.  <u>See id.</u> ¶ 4, at 3.

The United States has filed no objections to the PSR.  <u>See</u> Addendum at 1.  On March 24, 2008, the USPO stated that it discovered that Pena-Macedo and his counsel objected to the PSR in their Sentencing Memorandum, filed on February 29, 2008.  <u>See</u> Addendum at 1.  On March 25, 2008, the USPO disclosed an Addendum to the PSR.  <u>See</u> <u>id.</u>

At the March 26, 2008 hearing, Pena-Macedo asked the Court to consider his departure arguments as part of its consideration of the 18 U.S.C. § 3553 factors.  <u>See</u> Transcript of Hearing (taken December 7, 2007)("Tr.") at 3:4-9 (Esparza).[1]  Pena-Macedo's counsel represented that Pena-Macedo debriefed with the DEA agents and explained in great detail his role in this offense.  <u>See</u> <u>id.</u> at 4:2-5 (Esparza).  Pena-Macedo represented that it is undisputed that he did not own the drugs and only transported them.  <u>See</u> <u>id.</u> at 5:2-5 (Esparza).  The United States agreed that Pena-Macedo "appeared to be credible in the debriefing and the agents and the [Assistant United States Attorney] agreed that he appeared to be credible."  <u>Id.</u> at 5:18-21 (Gontis).  The United States explained that it believed Pena-Macedo to be "less culpable than the average participants[,] even though [it didn't] know exactly who they were."  <u>Id.</u> at 6:2-4 (Gontis).

## LAW REGARDING PURITY AND WEIGHT OF DRUGS

Pursuant to 21 U.S.C. § 841(b)(1)(B)(i), a violation under this subsection involves "100 grams or more of a mixture or substance containing a detectable amount of heroin."  <u>Id.</u>  Under U.S.S.G. § 2D1.1, Notes to Drug Quantity Table subsection (A) states: "Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."  <u>Id.</u>  And, as noted in U.S.S.G. § 2D1.1, Notes to Drug Quantity Table subsection (B), the court refers to the actual weight

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

-4-

of a substance only in cases involving PCP, Amphetamine, and Methamphetamine.  See U.S.S.G. § 2D1.1, Notes to Drug Quantity Table subsection (B)("The terms 'PCP (actual)', 'Amphetamine (actual)', and 'Methamphetamine (actual)' refer to the weight of the controlled substance, itself, contained in the mixture or substance.  For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual).").

Purity of a controlled substance has always been an issue, even when the sentencing Guidelines were mandatory.  Application Note 9 following § 2D1.1 states: "The purity of a controlled substance, particularly in the case of heroin, may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution."  U.S.S.G. § 2D1.1 app. n.9.

## LAW REGARDING SENTENCING AFTER UNITED STATES V. BOOKER

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute  . . .  shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to thoughtful consideration.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. §

3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  This presumption, however, is an appellate presumption, not one that the trial court can or should apply.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).  Instead, the trial court must undertake the § 3553(a)  balancing of factors without any presumption in favor of the advisory Guideline sentence.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).

## ANALYSIS

Pena-Macedo's request for a variance from the Guideline sentence is based on two primary arguments.  First, Pena-Macedo's counsel argues that the Guideline imprisonment range in this case is over-dependent on the quantity and drug involved.  Second, Pena-Macedo's counsel asserts that the Guideline range does not take into account that the heroin was substantially diluted.  The Court has carefully reviewed the USPO's calculations, and they are correct.  Moreover, despite Pena-Macedo's arguments, the Court concludes that a sentence at the low end of the applicable Guideline range, as calculated by the USPO, is an appropriate and reasonable sentence.

## I.   THE COURT WILL OVERRULE ANY OBJECTION TO THE BASE OFFENSE LEVEL CALCULATION IN THE PSR.

The USPO interprets Pena-Macedo's sentencing memorandum as an objection to the base-offense level referenced at paragraph 25 on page 8 of the PSR.  See Addendum at 1.  The USPO believes that Pena-Macedo's counsel is contending that the Court should use the actual weight of the heroin -- 387.1 grams -- rather than the net weight, to calculate the base offense level.  See id.

Pena-Macedo's counsel states that, by using the actual amount of the heroin, the base-offense level would be 26 rather than a base offense level of 28.  See Sentencing Memo. at 3-4.

It is not clear to the Court that Pena-Macedo is raising an objection and believes that he may be using these arguments to support his request for a variance.  In any case, subsection (A) of the Notes to the Drug Quantity Table indicate that the net weight of 555.4 grams should be used to establish the base-offense level.  See U.S.S.G. § 2D1.1, Notes to Drug Quantity Table (A).  Accordingly, based on the information from the Guidelines, the USPO properly determined that the 555.4 grams should be used to establish the base-offense level.  The Court will therefore overrule any objection to the PSR's Guideline calculations.

## II.   THE APPLICABLE SENTENCING-GUIDELINE RANGE DOES NOT OVERREPRESENT THE TYPE AND QUANTITY OF DRUG.

Pena-Macedo contends that, in his case, the Guideline range is far lengthier than necessary to accomplish the purposes of sentencing.  See Sentencing Memo. at 2.  Pena-Macedo asserts that the principal vice of his range is that it relies too heavily on the type and quantity of drug as a proxy for culpability, thus giving little to no consideration to other relevant § 3553(a) factors.  See Sentencing Memo. at 2.  Pena-Macedo asserts that the type and quantity of drug are but two relevant circumstances.  See id.

The Court agrees with Pena-Macedo that the Court should consider a number of sentencing factors in arriving at a reasonable sentence, and not just the advisory Guideline sentence or the type and quantity of drug involved.  On the other hand, the Court should give the type and quantity of drug substantial weight,  primarily because Congress has given these two factors substantial weight.  In large part, what this case is about is the drug that Pena-Macedo was transporting and the amount that he was moving.

Those two components are important aspects of the offense for which Pena-Macedo is being sentenced.  The Court certainly must and will consider the other facts that Pena-Macedo mentions, but the Court should not gloss over the very essence of the offense.  To not give the type and quantity of drug consideration would be to ignore the political expression of concern about those components by Congress and the Sentencing Commission.

Pena-Macedo argues that the Court should consider him a courier and that other relevant considerations under the <u>Booker</u> analysis include the lack of any evidence that Pena-Macedo was anything more than a low-level drug courier.  <u>See</u> Sentencing Memo. at 2.  Pena-Macedo contends that the lack of sophistication in the way the drugs were concealed, and the facts and circumstances of his post-arrest conduct are also relevant.  <u>See</u> <u>id.</u>  The United States represents, however, that both the United States' counsel and the USPO took these facts into account when they recommended that the Court treat Pena-Macedo as a minor participant, a significant benefit to Pena-Macedo in the calculation of the applicable Guideline range.  <u>See</u> Response ¶ 2, at 2.  Pena-Macedo is in Criminal History Category I, but has a prior conviction as noted in paragraph 34 of the PSR.  <u>See</u> PSR ¶ 34, 35, at 9.  Also, although he has no prior arrests or convictions for drug trafficking, there are indications that this run for which he is convicted was not his first venture into the drug-trafficking world.  While the Court agrees with Pena-Macedo that the Court should consider his lack of criminal history, this need does not require the Court to ignore other facts and factors that appear in the record.

Pena-Macedo contends that another consideration mandated by § 3553(a)(1) and not given sufficient effect by the PSR range is Pena-Macedo's "history and characteristics."  Sentencing Memo. at 2.  Specifically, Pena-Macedo emphasizes that he is, in essence, a twenty-four year old first offender with no criminal history other than a juvenile misdemeanor, for taking a drink of an

alcoholic beverage, for which he received nine months of juvenile probation.  See id. at 2-3.  The Court believes, however, that, despite Pena-Macedo's arguments otherwise, the Guideline sentence reflects well his history and characteristics, in two specific ways.  Pena-Macedo's lack of criminal history, an important factor, determined both his Criminal History Category and eligibility for the safety valve, both of which significantly reduced the otherwise applicable Guideline range.

Pena-Macedo concedes, as he must, that the PSR range reflects his concerns to some degree, especially insofar as it is based on Pena-Macedo's placement in Criminal History Category I.  See Sentencing Memo. at 3.  Pena-Macedo nonetheless contends, however, that this Criminal History Category fails to distinguish between someone who has no criminal history and someone who has a prior arrest or conviction record, but does not have sufficient criminal history points to place him in any of the higher criminal history categories.  See id.  Pena-Macedo maintains that, according to the PSR, he is in the former category.  See id.

It cannot be disputed that Criminal History Category I can include those without any criminal history as well as those with little criminal history.  It is not clear, however, that the Court should assume that Pena-Macedo is at the end of the spectrum along with those with the least involvement in criminal activity.  In any case, the Court believes that Pena-Macedo's argument goes more, perhaps, to where within the Guideline range his particular sentence should be rather than a persuasive rationale for varying from the Guideline sentence.

The Court concludes that the United States has, with other information, refuted Pena-Macedo's suggestion that the Court should treat him differently from other similarly situated defendants because he has an essentially clean record.  The Court believes that to vary because of Pena-Macedo's history and characteristics would, in fact, introduce unwarranted sentencing disparity among similarly situated defendants, and there does not appear to be a compelling reason

to depart in his case and to treat him so differently from similarly situated defendants.  Again, the PSR sufficiently accounts for his record.

Finally, Pena-Macedo contends that there is a cluster of less tangible factors for which the PSR range does not account: the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct[.]" 18 U.S.C. § 3553(a)(2)(A) and (C).  Pena-Macedo maintains that sentencing a first-offender to anywhere within a range based mostly on drug quantity is far greater than necessary to achieve those purposes.  See Sentencing Memo. at 3.  Pena-Macedo asserts that a sentence within the PSR range would undermine respect for the law, because it is so harsh and divorced from nearly all considerations except drug quantity.  See id.  Pena-Macedo states that, for these reasons, a sentence within the PSR range would be manifestly unjust.  See id.

Again, Pena-Macedo's Guideline imprisonment range is not overdependent on the quantity and on the drug involved in his offense.  Moreover, the Guideline range reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and will deter, both specifically and generally, criminal conduct.  The Court believes that the PSR's Guideline range properly accounts for the other factors that Pena-Macedo advances, and properly considers them for the calculation of the total offense level and criminal history category.

## III.    THE GUIDELINE RANGE FAIRLY TAKES INTO ACCOUNT THE FACT THAT THE HEROIN SEIZED WAS DILUTED.

Pena-Macedo contends that the heroin which he possessed was substantially diluted.  See Sentencing Memo. at 3.  Pena-Macedo maintains that, because the heroin in his case was only 69.7 percent pure, he possessed only  387.1 grams.  See id. at 3-4.  This amount would have placed him at offense level 26.  See id. at 4.

Pena-Macedo acknowledges that, under U.S.S.G. § 2D1.1, "the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."  Sentencing Memo. at 4 (quoting U.S.S.G. § 2D1.1, Notes to Drug Quantity Table, subsection (A)).  Pena-Macedo nevertheless contends that the Court needs to consider more than the weight, because the Guideline advisory range is advisory now, and that the heroin was substantially diluted is a "circumstance" of the offense that the Court must consider under 18 U.S.C. § 3553(a).  Sentencing Memo. at 4.  Pena-Macedo contends that the fact that the heroin in his case was substantially diluted is relevant as both a <u>Booker</u> factor and a Guideline factor.  <u>See</u> Sentencing Memo. at 4.  Pena-Macedo maintains that, in his case, because the heroin was only 69.7 percent pure, the Court should either depart for a lower Guideline  range or sentence below the Guideline range based on 18 U.S.C. § 3553(a) factors.  <u>See</u> <u>id.</u>

The United States contends that the heroin seized was not substantially diluted. <u>See</u> Response ¶ 3, at 2. The United States asserts that 69.7 percent purity is not substantially diluted. <u>See</u> <u>id.</u>  The United States maintains that such purity, to the contrary, is a relatively high purity for distributable heroin.  <u>See</u> <u>id.</u>

The United States represents that, according to a DEA agent who has extensive training and experience in narcotics investigations, a typical purity for heroin for sale on the "street" is 50%. Response ¶ 3, at 2.  The United States contends that a purity of nearly 70% is therefore a relatively highly concentrated form of heroin, and might even be "cut" or diluted further by a street-level dealer before being sold to users.  <u>Id.</u>  The United States' position is that, in any case, the heroin was far from being substantially diluted.  <u>See</u> <u>id.</u>

The Court is not convinced that the heroin here was substantially diluted.  Moreover, the dilution that was present has assisted the Court in giving Pena-Macedo a reduction for his role in

-12-

the crime.  In conclusion, the Court concludes that the advisory Guideline calculation reflects well the dilution factor by giving him a considerable benefit for his status as a courier, and that a variance is not warranted and begins to introduce an unwarranted sentencing disparity among similarly situated defendants.

**IT IS ORDERED** that any objection in the Defendant's Sentencing Memorandum is overruled.  The Defendant's requests for a variance from his advisory Guideline sentence are denied, and the Court will sentence him to a period of incarceration at the low end of the Guideline range.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
   United States Attorney
Stephen A. Gontis
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Mario A. Esparza
Las Cruces, New Mexico

   *Attorney for the Defendant*

-13-